UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROY STANDBERRY,

    Plaintiff,                                       CASE NO.: 4:19-cv-191

v.

CONN APPLIANCES, INC.,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff, Roy Standberry (hereinafter "Plaintiff"), by and through the undersigned counsel, and sues Defendant, Conn Appliances, Inc. (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Texas Debt Collection Act, Tex. Fin. Code § 392 *et seq.* ("TDCA").

**INTRODUCTION**

1. The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the

1

telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints…Some private analyses estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016." https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing

## JURISDICTION AND VENUE

5. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. The Defendant's principal place of business is in Montgomery County, Texas. Accordingly, venue is appropriate with this Court under 28 USC § 1391(b)(1) as it is the judicial district in the State where the Defendant resides.

## FACTUAL ALLEGATIONS

8. Plaintiff is a natural person, and citizen of the State of Texas, residing in Harris County, Texas.

9. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant is a corporation with its principal place of business located at 2445 Technology Forest Blvd., Suite 800, The Woodlands, Texas 77381.

11. Defendant called Plaintiff using its automatic telephone dialing system hundreds of times since early 2018 in an attempt to collect a debt without the Plaintiff's prior express consent.

12. Each of the aforementioned calls was made in a willful and intentional violation of the TCPA and TDCA.

13. Upon information and belief, some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to the Noble Predictive Dialer) or an artificial or pre-recorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "auto-dialer calls"). Plaintiff will testify that he knew it was an auto-dialer because of the vast number of calls he received, including up to ten (10) calls per day, and because he heard a pause when he answered

his phone before a voice came on the line, which is a commonly known indicator of the use of an auto-dialer.

14.     Plaintiff will further testify that he received many pre-recorded voicemail messages from the Defendant.

15.     Plaintiff will further testify that he received many "abandoned calls" from Defendant; meaning that he answered a call and there was no agent/voice on the other line. This is a common indicator of the use of an auto-dialer, whereby a computerized dialing system made a call and there was no agent available to transfer the call to when the Plaintiff answered.

16.     Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (713) ***-0340 and was the called party and recipient of Defendant's calls.

17.     Defendant placed an exorbitant number of auto-dialed calls to Plaintiff's cellular telephone (713) ***-0340 in an attempt to collect on a loan.

18.     In or about February of 2018, Plaintiff first instructed Defendant's agent(s) to stop calling his aforementioned cellular telephone number. Specifically, Plaintiff told Defendant that he did not want to receive any further calls to his cellular telephone.

19.     In or about mid-May 2018, Plaintiff communicated with Defendant from his aforementioned cellular telephone number and again instructed Defendant's agent to cease calling him.

20.     Despite these repeated requests for the calls to stop, the Defendant continued to autodial the Plaintiff on his cellular telephone number at a rate of up to ten

(10) calls per day, on back-to-back days, in an obvious effort to harass the Plaintiff into making a payment.

21. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

22. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number.

23. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant that they do not wish to be called.

24. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

25. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

26. Defendant has had numerous complaints against it from consumers across the country asking to not be called; however Defendant continues to call these individuals as part of its business model.

27. Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant's call list.

28. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

29. Not one of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

30. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

31. From each and every call placed without express consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

32. From each and every call without express consent placed by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular telephone by unwelcome calls, making the cellular telephone unavailable for legitimate callers or outgoing calls while the cellular telephone was ringing from Defendant's call.

33. From each and every call placed without express consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the cellular telephone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

34. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the cellular telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

35. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

36. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone where a voice message was left which occupied space in Plaintiff's cellular telephone or network.

37. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular telephone and his cellular telephone services.

38. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, frustration, anger, nervousness, embarrassment, and aggravation.

## COUNT I
### (Violation of the TCPA)

39. Plaintiff fully incorporates and re-alleges paragraphs one (1) through thirty-eight (38) as if fully set forth herein.

40. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff wished for the calls to stop.

41. It is clear from Defendant's pattern of behavior that these violations were part of a willful and knowing plan to harass and intimidate the Plaintiff into making a payment.

42. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Conn Appliances, Inc., for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

### COUNT II
### (Violation of the Texas Debt Collection Act)

43. Plaintiff fully incorporates and re-alleges paragraphs one (1) through thirty-eight (38) as if fully set forth herein.

44. The facts stated above demonstrate that Defendant violated the Texas Debt Collection Act.

45. The Plaintiff is a "consumer" as that term is defined by the Texas Debt Collection Practices Act, as set forth in Chapter 392 of the Texas Finance Code ("TDCA").

46. The Plaintiff's relationship with the Defendant arose out of a "consumer debt" as that term is defined in the TDCA.

47. Defendant is a "debt collector" as that term is defined in the TDCA.

48. Defendant violated Tex. Fin. Code. § 392.302(4) by continually making calls in the collection of a debt with the only intent being to annoy and harass Plaintiff into paying, even after Plaintiff had requested that the calls to his cellular telephone cease.

49. Defendant has willfully violated the TDCA and Plaintiff is this entitled to an injunction, actual damages, and attorney's fees.

50. Violations of the Finance Code are also deemed to be violations of the Texas Deceptive Trade Practices Act, Subchapter E, Chapter 17, Texas Business and Commerce Code, and are actionable under that subchapter. As a result thereof, Defendant is liable for actual damages, treble damages, the payment of legal fees and costs, and exemplary damages.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Conn Appliances, Inc., for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

        Respectfully submitted,


        <u>*/s/Amy E. Clark, Esquire*</u>
        Amy E. Clark, Esquire
        Texas Bar #: 24043761
        Amy Clark Law
        223 West Anderson Lane, #B508
        Austin, TX 78752
        Telephone: (512) 850-5290
        amy@amyclarklaw.com
        *Counsel for Plaintiff*